352 So.2d 386 (1977)
LANGFORD LAND COMPANY
v.
DIETZGEN CORPORATION.
No. 8460.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1977.
*387 Coleman, Dutrey, Thomason, Meyer & Jurisich, Richard B. Jurisich, David R. Paddison, New Orleans, for plaintiff-appellant.
Gordon, Apata, McCollam & Watters, John M. McCollam, Andrew L. Gates, III, New Orleans, for defendant-appellee.
Before STOULIG, BOUTALL and BEER, JJ.
BEER, Judge.
Langford Land Company seeks to recover a deposit of $52,500, made pursuant to an agreement to purchase property at 318 Camp Street in New Orleans.
Survey of the property, made following the agreement, revealed that the building walls on the Gravier Street (north) and Natchez Street (south) sides straddle the property line. On the Gravier Street side, the wall extends to a maximum of 6 inches beyond the property line, and on the Natchez Street side, to a maximum of 10.6 inches. The Natchez Street wall is described as "party wall" on the survey. The survey also shows a fire escape extending beyond the rear property line.[1]
Langford thereupon notified the prospective seller, Dietzgen Corporation, that they were unwilling to proceed, predicated upon clause 6 of the agreement:
"Subject to all title and zoning restrictions of record, or by laws or ordinances imposed, Dietzgen shall be obligated to deliver to Langford on the date of the act of sale a legal, valid and merchantable title to the Subject Property, in default of which the contract shall be null and void, reserving unto Langford the right to demand the return of the deposit made contemporaneously with the execution thereof."
Concurrently, they asked for the return of the deposit.
Dietzgen responded, contending that the existence of party wall servitudes did not render this downtown municipal property unmerchantable, and expressed its intention to proceed. The date for the act of sale was set. Langford did not appear. The deposit has been retained by Dietzgen and this litigation resulted. Langford alleges, inter alia, that: "* * *

VI.
The existence of said party wall servitudes creates an encroachment on the property and gives to the adjoining property owners rights and privileges in and to the walls on each sideline of the property, and rights and privileges on the land upon which said walls rest, all being portions of lots 11, 12, 29 and 30 of Square 167 of the First Municipal District, and the improvements which rest thereon.

VII.
The existence of said party walls renders it impossible for the defendant to deliver a merchantable title to the property, and petitioner called upon defendant to return the deposit in accordance with the provisions of paragraph 6 of the agreement. Petitioner has received a letter from defendant's attorney refusing to return said deposit."
The issue addressed in the pleadings and at trial was whether the alleged existence of party wall servitudes constituted an effective merchantability defect, nullifying the agreement. However, by pretrial motion, and, later, on appeal, appellant Langford sought to raise other issues, alleging that the walls were not evenly centered on the property line, thus causing them to be something other than party walls. Evidence supporting these contentions was correctly held inadmissible and the fact that *388 the survey showing these encroachments was admitted into evidence can not constitute enlargement of the pleadings, same having been admitted solely for the purpose of showing the encroachments specifically alleged. Young v. Stevens, 252 La. 69, 209 So.2d 25, 30 (1967). The appropriate remedy for amending the pleadings as provided in La.C.C.P. art. 1154 was not followed. The only issue properly before us is whether the existence of party wall servitudes on this urban lot constitutes an encumbrance sufficient to render title to the property unmerchantable.
In Roberts v. Medlock, 148 So. 474, 476 (La.App. 2nd Cir. 1933), the court described a merchantable title as:
". . . one which can be readily sold or mortgaged in the ordinary course of business, to a reasonable person familiar with the facts and appraised of the question of law involved. It need not be free from every technical defect, of all suspicion, or the possibility of litigation. It must be a record title free of rational substantial doubt to the extent that a purchaser should feel that he can hold his purchase in peace without the probability of attack and with reasonable assurance that it will be readily salable on the open market, (citations omitted).
The word `merchantable' implies something less than a perfect title and permits of defects which are not reasonably liable to result in assault. This presents a question of fact as well as one of law." Accord, White v. Batson, 317 So.2d 205 (La. App. 1st Cir. 1975), writ refused, La., 320 So.2d 915.
In seeking to recover a deposit on the grounds that title is unmerchantable, one must show that third persons (not parties to the action) might thereafter make claims of a substantial nature against the property, and thereby subject the vendee to serious litigation. Kay v. Carter, 243 La. 1095, 150 So.2d 27, 29 (1963); Morgavi v. Mumme, 254 So.2d 278 (La.App. 4th Cir. 1971), rev. on other grounds, La., 270 So.2d 540; Pesson Plumbing and Heating Company, Inc. v. Hammonds, 160 So.2d 769 (La. App. 3rd Cir. 1964). Thus, where one seeks to demonstrate that a title is unmerchantable as suggestive of litigation, he bears the burden of proof, as in any other usual litigation.
This record contains no evidence that the Gravier Street side wall, which abuts the parking lot, is, in fact, a party wall. The survey does describe the Natchez Street side wall as a party wall, and we will, arguendo, make that assumption. La. Civil Code art. 675 provides that he who first builds on urban property may rest one-half of his wall, up to nine inches not including plastering, on the land of his neighbor. However, a wall so constructed remains a private wall until the neighboring landowner, acting under either Article 676 or 684, compensates the builder of the wall for its use, at which time it becomes a common, or party, wall. See, A. N. Yiannopoulos, "Common Walls, Fences and Ditches: Louisiana and Comparative Law," 35 La.L.Rev. 1249 (1975).
The record in this case is devoid of evidence tending to show who built the walls and/or whether or not there was contribution by the neighbor who did not build.
Langford appears content to rest its contention that the title is suggestive of litigation on the theory that, regardless of whether there is, in fact, a party wall, the ultimate determination of that fact will require litigation, and, thus, the merchantability is impaired. They offer no proof that the threat of such is substantial, or has serious basis.
John Langford, president of Langford Land Company, indicated that the company's refusal to proceed was further based upon a belief that half of the Natchez Street side wall belonged to the owner of the adjoining property (used as a parking lot) who might have objections to its demolition.
No other evidence supportive of the contention the alleged party wall was a possible cause of future litigation is in the record except the observation of Langford's attorney advising against the purchase.
*389 This does not constitute a basis for a determination of unmerchantability. See: White v. Batson, supra; Pesson Plumbing and Heating Company, Inc. v. Hammonds, supra.
In Morgavi v. Mumme, supra, where plaintiff sought to recover a deposit made pursuant to an agreement to purchase real estate on the grounds that the property was not in compliance with certain zoning ordinances, we observed:
"The question before us is whether plaintiff proved by a preponderance of evidence that the title is not merchantable and is therefore under the agreement entitled to the return of the deposit as well as any amount for damages incurred." Id., at 280.
Return of the deposit was denied because plaintiff failed to carry its burden of proof that any of the zoning ordinances were violated.
The burden of proof that merchantability is impaired by reason of being suggestive of litigation is, of course, quite different, and less stringent, than the burden of proof in actual litigation involving title to property and/or party walls. The burden, nevertheless, exists and, even though less stringent, must be affirmatively carried. There is no basis in this record for any presumption of impaired merchantability which relieved Langford of the burden of proof.
Langford's contention that the existence of the alleged party wall constitutes an encumbrance in the form of a nonapparent servitude, thus constituting a right under La.Civ.Code art. 2515 to cancel the contract to purchase, is without merit. A prospective purchaser is deemed to know of servitudes imposed by law. Bourg v. Niles, 6 La.Ann. 77 (1851).
We find no error in the judgment of the district court, which is, accordingly, affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] By oral stipulation, this "encroachment" is not at issue.