## M. Dubose v. The Levee Commissioners.

| 11 | 165 |
|-----|------|
| 45 | 423 |
| 11 | 165 |
| 46 | 1530 |
| 11 | 165 |
| 110 | 387 |

Action of damages for injury to the value of plaintiff's property, by constructing a new levee behind plaintiff's buildings, so as to place them out of the protection of the levee. *Held:* That plaintiff, in claiming damages from defendants, admitted that the levee was constructed by their order, and that under the pleadings, the regularity, in point of form, of their proceedings, as a deliberative body, could not be inquired into.

All landed proprietors whose property lies adjacent to a navigable stream hold it subject to certain conditions, imposed for the common utility.

There is no law prescribing where the levee opposite the town of Providence should be run. The Levee Inspectors and two freeholders are directed by law to lay off the levees *at a suitable distance from the bank of the Mississippi river*, and there is nothing in the law to restrain the discretion thus conferred. *By the Court:* But the Commissioners have not an arbitrary discretion; and if they were wantonly and unnecessarily to set the levee so far back as to ruin the plaintiff's property, he would not be without remedy. At the same time, this court will be reluctant to interfere with the exercise of that discretion which is confided to sworn officers living near the locality; and before doing so, will require a clear case of oppression or injustice to be made out on the part of the complainant.

The law concerning the expropriation of private property for public use does not apply to such lands as may be found necessary for levee purposes.
Code, 661.

APPEAL from the District Court, Tenth District, Parish of Carroll, *Farrar*, J. *Dubose, pro. per.*, for plaintiff and appellant. *Stacy & Sparrow*, for defendant.

SPOFFORD, J. The plaintiff sued the Board of Levee Commissioners in the parish of Carroll, constituted by the Act of March 18th, 1852, (see Acts, p. 234,) as amended by the Act of 25th March, 1853, p. 44, for $7000 damages, alleged to have been occasioned by the wrongful acts of the latter, in running a line across his premises in the town of Providence, near the rear line thereof, and thereby throwing his dwelling-house, and the most valuable portion of his lots, out of the protection of the levee, and totally destroying their value.

The evidence is, that in December, 1852, the plaintiff bought the property, of whose destruction he complains, for the sum of $2000; that the old levee ran and still runs about forty yards in front of his house, and is only about thirty yards above the margin of the Mississippi river, in a low stage of water; that for several years prior to the erection of the new levee in the rear of the plaintiff's house, the bank of the river in front had been rapidly caving; that there was a belief that the old levee would be insecure for the protection of the town many years longer, on account of the continual inroads of the river upon that portion of the bank which fronts the premises in question; that there was a crack in the bank opposite plaintiff's house—which is an indication that the caving will continue; and that, under these circumstances, with a view to the permanent protection of the town and of the alluvial region beyond, the new levee was built in December, 1854, running behind the plaintiff's house, across the rear of his lots, between three and four hundred feet back of the old levee, notwithstanding the plaintiff and some of his neighbors, whose property was levied out in a similar manner, protested against it.

There is no doubt but that the property is less saleable, and is considerably impaired in value by the action of the Levee Commissioners.

The plaintiff submitted his cause to a jury of the vicinage, who found a special verdict to the effect that the land was subject to a servitude, and that the Levee Commissioners had a right to build a levee where it now stands. Thereupon judgment was entered against the plaintiff, and he appealed.

DUBOSE
v.
LEVEE COMMIS'RS.

The first point made by him, that the Commissioners never ordered the levee to be built where it is. This would seem to be inconsistent with his demand for damages against them. By suing them he has assumed that the act of building the levee was their act, and they, by their course in the defence, have admitted it; under the pleadings, the regularity, in point of form, of their proceedings as a deliberative body, cannot be inquired into.

The only question is, does the act of the defendants, in constructing the levee where it is, furnish a ground of action for damages, under the evidence in this case?

The question resolves itself into two branches:

I. Had the Levee Commissioners a legal right, under any circumstances, to erect the levee where it is?

II. Have they, under the circumstances of the case, exercised that right, supposing it to be one, discreetly, or wantonly, so as to damage the plaintiff without necessity?

All landed proprietors, whose property lies adjacent to a navigable stream, hold it subject to certain conditions imposed for the common utility. "Services imposed for the public or common utility relate to the space which is to be left for public use by the adjacent proprietors, on the shores of navigable rivers, *and for the making or repairing of levees*, roads and other public or common works. All that relates to this kind of servitude is determined by laws or particular regulations." C. C. 661.

Is there any law prescribing where the levee opposite the town of Providence should be run? The 18th section of the Act of 1852 (p. 236) declared that it should be the duty of the Levee Inspectors, together with two free-holders of his levee ward, to lay off the levee therein, *at a suitable distance from the bank of the Mississippi river;* and they were required to take an oath faithfully and impartially to perform this duty. See also the sec. 15 Act March 25th, 1853, p. 46. It will thus be seen that an enlarged discretion was entrusted to the Inspectors and freeholders; they were to declare under oath what was a suitable distance from the river. We have been referred to no law restraining them, in the exercise of that discretion, to any particular distance from the river. And from the anterior legislation upon similar subjects, we infer that there was no arbitrary limit.

The Act "Relative to roads and levees," approved Feb. 7th, 1829, § 3, p. 78, declared "that in future every new levee shall be constructed—to wit: in places where the bank is apt to tumble down (*endroits sujets à éboulis*) at the distance of *at least* one arpent from the water's edge; and in places where the same inconvenience does not exist, at the distance of *at least* sixty feet, provided that in both cases the said distance shall be measured from the summit of the bank of the river." This Act, fixing only a minimum distance from the bank, implies that the maximum distance was unlimited by positive law.

We, therefore, conclude that the Commissioners, acting upon the recommendation of the Inspector of the Levee Ward and the freeholders, had a legal right, if the circumstances required it, to erect the new levee where they did, and that the plaintiff held his land subject to this servitude, for the public utility.

But, in the second place, we are of the opinion that the Commissioners had not an arbitrary discretion; and if they wantonly and unnecessarily set the

levee so far back as to ruin the plaintiff's property, he would not be without remedy. At the same time, in matters of this kind, this court will be reluctant to interfere with the exercise of that discretion which is confided to sworn officers living near the locality, and, before doing so, will require a clear case of oppression or injustice to be made out on the part of the complainant.

The plaintiff in this case has been, apparently, a sufferer, but we are not prepared to say that the Board of Levee Commissioners acted arbitrarily, or wantonly, or unjustifiably in placing the new levee where they did. To reconcile the controlling interest of the public with the subordinate interest of the individual is ever a delicate problem: when they come in conflict the latter must yield. In this case, if the plaintiff suffers, it must be attributed to an unfortunate or improvident investment upon a caving bank. He could not expect the State to warrant him against the abrasions of the Mississippi river, or to move the levee back inch by inch as the river encroached upon the bank, so as to save him the utmost amount of property. The safety of the public has to be first consulted. When a new and expensive levee is to be built, prudence dictates that it should be so located as to be secure for many years from crumbling into the river. The evidence in this cause shows that such were the views which governed the Inspector and Commissioners. The facts with reference to the condition and history of the bank opposite the plaintiff's house seem to have justified their action; and a verdict rendered by a jury of the neighborhood, and supported by the opinion of the District Judge, refusing a new trial, strengthens the presumption in favor of the propriety of the defendant's course.

The law concerning the expropriation of private property for public use does not apply to such lands upon the banks of navigable rivers as may be found necessary for levee purposes. The quantity of land to be taken for such purposes presents a question of police or administration to be decided by the local authorities, whose decision should not be revised by this tribunal except for the most cogent reasons, and where there has been manifest oppression or injustice.

*Mayor of Thibodeaux* v. *Maggioli,* 4 Ann. 73; *Zenor* v. *Parish of Concordia,* 7 Ann. 150; *Hanson* v. *City Council of Lafayette,* 18 L. 295; C. C. 446, 448; *Boury* v. *Miles,* 6 Ann. 77.

It is therefore ordered that the judgment of the District Court be affirmed, with costs.