87 So.2d 749

Raymond H. DELAUNE et ux.

v.

The BOARD OF COMMISSIONERS FOR The PONTCHARTRAIN LEVEE DISTRICT.

No. 40014.

May 7, 1956.

———◆———

Christensen, Salomon & Christensen, by Siegfried B. Christensen, New Orleans, for plaintiffs-appellants.

George A. Dreyfous, William V. Redmann, New Orleans, amici curiae.

Lloyd R. Himel, Sigur Martin, Lutcher, for defendant-appellee.

McCALEB, Justice.

Plaintiffs brought this suit to recover $5,000, the alleged value of two certain parcels of land owned by them bordering on Lake Pontchartrain which were appropriated by the Board of Commissioners for the Pontchartrain Levee District for the construction of a levee along the south shore of the lake to protect the lands lying back of said levee from overflow of the waters of the lake.

The defendant Board filed an exception of no cause of action to the petition and, after argument, it was maintained by the trial judge. Plaintiffs applied for a rehearing and filed a supplemental petition reiterating the allegations of their first petition and raising certain constitutional issues not theretofore presented. However, the judge adhered to his original opinion and dismissed the suit. Hence this appeal.

The exception interposed by defendant is founded on the premise that plaintiffs' property, fronting on Lake Pontchartrain, was burdened with a public servitude for the construction and repair of levees under Article 665 of the Civil Code and was lawfully appropriated for such use; that, by Section 8 of Article 16 of the Constitution, as amended by Act 398 of 1946, the Board was granted specific authority and it became its mandatory duty to build a levee bordering the shores of Lake Pontchartrain from the intersection of the Orleans and Jefferson Parish line to the east end of the Bonnet Carre Spillway to protect the lands fronting the lake from the floodwaters of the Mississippi River which might be released through said Spillway and that, since the only amount due under Section 6 of Article 16 of the Constitution for the appropriation of the land for this public purpose is the assessed value thereof for the preceding year, no cause of action is alleged because of the failure of petitioners to set forth such assessed value.[1]

---

1. If the contention were legally sound, the exception of no cause of action is procedurally proper. See Lacour v. Red River, Atchafalaya & Bayou Boeuf Levee Dist., 158 La. 737, 104 So. 636; Dickson v. Board of Com'rs, 210 La. 121, 26 So.2d 474.

It is the well-established law and jurisprudence of this State that a servitude in favor of the public is imposed upon land adjacent to navigable rivers and streams for the purpose of constructing and repairing levees, roads and other public or common works. Article 665 of the Civil Code; Hanson v. City Council of Lafayette, 18 La. 295; Bourg v. Niles, 6 La.Ann. 77; Dubose v. Levee Commissioners, 11 La.Ann. 165; Bass v. State, 34 La.Ann. 494; Ruch v. City of New Orleans, 43 La.Ann. 275, 9 So. 473; Peart v. Meeker, 45 La.Ann. 421, 12 So. 490 and Dickson v. Board of Com'rs, 210 La. 121, 26 So.2d 474 (containing an excellent historical background of the evolution of this servitude). It is equally well settled that land burdened with this servitude may be taken for the purpose of making or repairing public levees without compensation and that such appropriation violates neither Section 2 of Article 1 of our Constitution, forbidding the taking or damaging of private property except for public purposes and after just compensation is paid, see Ruch v. City of New Orleans and Dickson v. Board of Com'rs, supra, nor the due process clause of the Fourteenth Amendment to the Constitution of the United States for the reason that riparian ownership is subject to the superior right of the public to the space necessary for levees, roads and the like. Eldridge v. Trezevant, 160 U.S. 452, 16 S.Ct. 345, 349, 40 L.Ed. 490.[2]

Moreover, it has been consistently recognized that the provisions of Section 6 of Article 16 of the Constitution of 1921, that "Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes, * * * shall be paid for at a price not to exceed the assessed value for the preceding year; * * *", does not establish a yardstick of compensation for such lands but is merely a gratuity.[3] Boyce Cottonseed Oil Mfg. Co. v. Board of Com'rs, 160 La. 727, 107

2. In that case, the Supreme Court, taking cognizance that title to riparian lands in Louisiana became burdened with the public servitude for levee and road use at the time those lands were separated from the public domain, concluded that:

"The subject-matter of such rights and regulations falls within the control of the states, and the provisions of the fourteenth amendment of the constitution of the United States are satisfied if, in cases like the present one, the state law, with its benefits and its obligations, is impartially administered."

3. It is manifest that the validity of this provision is sustainable only on the basis that payment of assessed value is a gratuity for to regard it as compensatory would be to render it inimical to the due process clause of the Fourteenth Amendment to the Federal Constitution. Chicago, Burlington & Quincy Railroad Co. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979.

So. 506; Wolfe v. Hurley, D.C., 46 F. 2d 515, affirmed 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423 and Dickson v. Board of Com'rs, supra.

■ With the foregoing principles in mind, we undertake a consideration of the legal questions presented in the case. At the outset, it is clear that the abutting of plaintiffs' property on Lake Pontchartrain furnishes no ground for a conclusion that it is, a priori, subject to a public servitude for levee purposes. Article 665 of the Civil Code provides that public servitudes " * * * relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable *rivers,* and for the making and repairing of levees, roads and other public or common works". (Italics ours.) This Article, in conformity with its language, has been found to be applicable only to navigable rivers or streams. Lakes are not included.

In Pontchartrain Railroad Co. v. Board of Levee Com'rs, 49 La.Ann. 570, 21 So. 765, plaintiff was awarded compensation for the damages sustained by its lake-front property as a result of the building of a levee between the city of New Orleans and Lake Pontchartrain. The court pointed out that, while the front proprietor on the Mississippi River or other navigable rivers must yield his property without compensation for levee and road purposes, plain-

tiff's land owed no such servitude as it was not on the river. See also Articles 455, 509 and 510 of the Civil Code and State v. Aucoin, 206 La. 787, 20 So.2d 136 and authorities there cited.

Since the lake-front location of plaintiffs' property did not burden it with a public servitude for levee purposes, it would appear from the well-pleaded facts of the petition that a cause of action is stated. However, counsel for defendant Board contend, and the trial judge held, that the land was nevertheless encumbered with a servitude for levee purposes by virtue of Sections 6 and 8 of Article 16 and Section 30 of Article 14 of the Constitution and under the holdings in Wolfe v. Hurley, supra, and Board of Com'rs of Tensas Basin Levee District v. Franklin, 219 La. 859, 54 So.2d 125 (appeal dismissed for want of a substantial Federal question, 342 U.S. 844, 72 S.Ct. 80, 96 L.Ed. 638, rehearing denied 342 U.S. 889, 72 S.Ct. 174, 96 L.Ed. 667).

■ There is no merit whatever in the contention that the cited Sections of the Constitution (or any one of them) imposed a servitude on plaintiffs' land. Section 30 of Article 14 pertains to the rights of riparian owners on navigable rivers, lakes or streams within the limits of the Port of New Orleans or within a municipality having a population in excess of 5,000 inhabitants. It has nothing to do with this case.

■ Section 6 of Article 16, as we have heretofore found, provides for the payment to the owner of a gratuity equal to the assessed value of his property taken for levee purposes; it does not and could not, for obvious constitutional reasons, burden land already separated from the public domain with a servitude. The most that can be said with reference to the provision is that it may be liberally interpreted so as to sanction the taking of property for levee purposes without resort to court proccedings when the necessity for immediate action is in the public interest and that a landowner may not enjoin or prevent the taking even though proof of the right of appropriation may not be as conclusive as that required in a suit, such as this, for the recovery of compensation or resultant damages. Wolfe v. Hurley and Board of Com'rs of Tensas Basin Levee District v. Franklin, supra.[4]

■ Section 8 of Article 16 of the Constitution, which authorizes the defendant Board to construct levees on the shores of Lake Pontchartrain to protect against a rise in the level of the lake caused by the floodwaters of the Mississippi River at times when the Bonnet Carre Spillway is in use, does not create a servitude on any property for levee uses, nor does it sanction the taking of property for levee purposes without compensation. If it did, it would be violative of the Federal Constitution for the reasons to which we have heretofore adverted.

Accordingly, it remains only to determine whether the adjudications in Wolfe v. Hurley and Board of Com'rs of Tensas Basin Levee District v. Franklin, supra, have extended the provisions of Article 665 of the Civil Code so that the public servitudes therein imposed for levee purposes apply to lands which do not border on navigable streams.

Under the earlier decisions, this court generally held that the public servitude for levee purposes existed only on property actually fronting on navigable rivers or streams. Pontchartrain Railroad Co. v. Board of Com'rs, supra. In Koerber v. New Orleans Levee Board, 51 La.Ann. 523, 25 So. 415, payment of compensation was ordered for earth taken by Orleans Levee Board from nearby property to broaden a protection levee which ran at right angles to the Mississippi River, the court holding that this property was not subject to a servitude, not being adjacent to the river.

4. In Dickson v. Board of Com'rs [210 La. 121, 26 So.2d 478] the Court, after reciting the historical background of servitudes for levee uses in Louisiana, observed that, when the building or repairing of levees is involved, " * * * the state has the right to act first, i. e., the authority to appropriate such land to a use to which it is subject under its very title, and talk later."

The restrictive nature of the public servitude was also noted in Village of Moreauville v. Boyer, 138 La. 1070, 71 So. 187 and McGeehan v. Board of Levee Commissioners, 165 La. 241, 115 So. 473.

On the other hand, in Wolfe v. Hurley, supra, petitioners sought to enjoin the Secretary of War and the Mississippi River Commission from constructing a new levee on lands some four miles distant from an existing levee on Lake Palmyra (an arm of the Mississippi River) until just and adequate compensation be made for the lands taken therefor. Apparently, the banks of Lake Palmyra were rapidly caving and the character of the land fronting directly on the lake made it unavailable for levee purposes. In denying the injunction, a three-judge Federal Court, with Judge Dawkins (formerly a member of this Court) as its organ, concluded that the legal servitude contemplated by Article 665 of the Civil Code applies " * * * not only to property which actually adjoins the river's edge, but to all of that which is within range of the reasonable necessities of the situation, as produced by the forces of nature, unaided by artificial causes". [46 F.2d 522].

Our recent decision in Board of Com'rs of Tensas Basin Levee District v. Franklin, supra, where we upheld an injunction against the defendants from interfering with levee drainage work being conducted by the Levee Board on their land, which was located some 17 miles from a navigable stream (Bayou Bartholomew), approved the rationale of Wolfe v. Hurley that the servitude imposed by Article 665 of the Civil Code is not limited in its scope to the land bordering on the shore of the river but covers all adjoining lands within the reasonable necessities for flood control unaided by artificial causes.[5]

■ We do not regard the decisions in either Wolfe v. Hurley or the Franklin case as controlling this cause in view of the allegations of plaintiffs' petition which merely show that the land is located on Lake Pontchartrain. How far it is from the Mississippi River or any other navigable stream is neither averred in the petition nor shown by exhibits thereto and, therefore, it is impossible to ascertain whether there is a servitude thereon for levee purposes.[6] It is manifest from a consideration of Article 665 of the Civil Code and the numerous authorities construing it that,

5. The view expressed in the Franklin case is to be compared with that in the later case of Hebert v. T. L. James & Co., 224 La. 498, 70 So.2d 102, where the court gave Article 665 of the Civil Code a restrictive interpretation when applied to a servitude for road purposes.

6. Compare the Dickson and Lacour cases where the petitions exhibited that the lands bordered navigable streams and were thus subject to the public servitude.

where lands are not shown to be riparian lands, they are not subjected to a public servitude. This servitude, as explained in Dickson v. Board of Com'rs, comes into existence at the time the property bordering on the navigable stream is separated from the public domain. Accordingly, in order to ascertain whether a particular property appropriated for levee purposes is subject to a servitude, it is essential to trace the title to the original grant when the land itself does not actually front on the stream. If that grant shows that the tract was riparian property when separated from the public domain, then the next question to be determined, conformably with the holdings in Wolfe v. Hurley and the Franklin case, is whether the property taken "is within range of the reasonable necessities of the situation, as produced by the forces of nature, unaided by artificial causes". These are purely questions of fact which are determinable by a trial on the merits and not on an exception of no cause of action.

The judgment appealed from is therefore reversed; the exception of no cause of action is overruled and the case is remanded for further proceedings in accordance with law and consistent with the views herein expressed. Taxation of costs of this appeal is deferred until final disposition of the case.

HAMITER, J., concurs in the decree.